1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

DAVID BORDEN,

CASE NO. C19-1430JLR

11

                            Plaintiff,

ORDER GRANTING MOTION
TO STAY

12

              v.

13

EFINANCIAL, LLC,

14

                            Defendant.

15      Before the court is Defendant eFinancial, LLC's ("eFinancial") motion to stay.

16 (Mot. (Dkt. # 40).)  Plaintiff David Borden opposes eFinancial's motion. (Opp. (Dkt.

17 # 46).)  The court has considered the motion, the parties' submissions concerning the

18 motion, the parties' notices of supplemental authority (Dkt. ## 48-50), the relevant

19 portions of the record, and the applicable law.  Being fully advised, the court GRANTS

20 eFinancial's motion to stay (Dkt. # 40).

21 //

22 //

ORDER GRANTING MOTION TO STAY - 1

# I.   BACKGROUND

Mr. Borden filed his original complaint in this proposed class action on September 9, 2019.  (Compl. (Dkt. # 1).)  On August 10, 2020, Mr. Borden filed his amended complaint, asserting on behalf of himself and a proposed class one cause of action under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("the TCPA").  (Am. Compl. (Dkt. # 39).)  The TCPA prohibits companies from using an "automatic telephone dialing system" ("ATDS") to make calls to a telephone number assigned to a cellular service.  47 U.S.C. § 227(b)(1)(A).  It defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.*  The TCPA does not impose liability where the "called party" provides "prior express consent" to receive calls.  *Id.* § 227(b)(1)(a).

Mr. Borden alleges that after completing a form on Progressive.com's website that offered a quote for life insurance, he was directed to a page on eFinancial's website which requested additional information.  (Am. Compl. ¶¶ 13-16.)  After completing the eFinancial form, Mr. Borden clicked a button labeled "Next, your rates," to proceed with the rate quote.  (*Id.* ¶¶ 17-20.)  Mr. Borden alleges that he did not see a message in fine print below the "Next, your rates" button that stated that by clicking the button, he would consent to receive offers of insurance from eFinancial by email, telephone, and text.  (*Id.* ¶¶ 21-22.)  Although Mr. Borden decided not to move forward with his application for life insurance, he subsequently began to receive telemarketing text messages from eFinancial on his personal cell phone.  (*Id.* ¶¶ 29-32.)  He alleges that eFinancial sent the

1  text messages using an ATDS and that the "Next, your rates" button and the fine print

2  beneath it were insufficient to establish that he gave "prior express consent" to receive

3  messages within the meaning of the TCPA.  (*Id.* ¶¶ 22-25, 37.)

4         The interpretation of the statutory definition of "ATDS" is the subject of a split

5  among the circuit courts of appeal. Specifically, the circuits are divided on the question of

6  whether the clause "random or sequential number generator" in Section 227(a)(1)(A)

7  modifies both "to store" and "to produce."  The Third, Seventh, and Eleventh Circuits

8  have concluded that a system that simply dials from a stored list of numbers is not an

9  ATDS because the system must have the capacity to generate random or sequential

10 numbers to be called to qualify as an ATDS.  *See Dominguez v. Yahoo, Inc.*, 894 F.3d

11 116 (3d Cir. 2018); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020); *Glasser*

12 *v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020).  The Second, Sixth, and

13 Ninth Circuits, however, have concluded that a system that can automatically dial

14 numbers from a stored list meets the definition of an ATDS, even if that system does not

15 use a random or sequential number generator.  In *Duguid v. Facebook, Inc.*, 926 F.3d

16 1146, 1151 (9th Cir. 2019), the Ninth Circuit held that "the adverbial phrase 'using a

17 random or sequential number generator' modifies only the verb 'to produce,' and not the

18 preceding verb, 'to store.'"  Thus, "an ATDS need not be able to use a random or

19 sequential generator to store numbers—it suffices to merely have the capacity to 'store

20 numbers to be called' and 'to dial such numbers automatically.'"  *Id.* (internal citations

21 omitted); *see also Duran v. LaBoom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) (following

22

1   the Ninth Circuit); *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir.

2   2020) (joining the Second Circuit and Ninth Circuit).

3     On July 9, 2020, the Supreme Court granted certiorari review of the Ninth

4   Circuit's decision in *Duguid* to resolve this circuit split.  *Facebook, Inc. v. Duguid*, No.

5   19-511, 2020 WL 3865252 (U.S. July 9, 2020) ("*Duguid II*").  The Court accepted review

6   of the following question:

7     Whether the definition of ATDS in the TCPA encompasses any device that
  can "store" and "automatically dial" telephone numbers, even if the device
8     does not "us[e] a random or sequential number generator."

9   *Id.* (noting the Court had accepted review of the second question in Facebook's petition).

10  (*See* Mot. Ex. 1 at ii (Facebook's petition for review, listing proposed questions).  Oral

11  argument is set to take place on December 8, 2020.  *See*

12  http://www.supremecourt.gov/docket/docketfiles/html/19-511.html.

13    eFinancial now moves for a stay of proceedings in this case pending the Supreme

14  Court's issuance of its ruling in *Duguid II*.

15  **II.  DISCUSSION**

16  **A.  Legal Standard**

17    A district court's discretion to stay proceedings "is incidental to the power

18  inherent in every court to control the disposition of the causes on its docket with

19  economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*,

20  299 U.S. 248, 254 (1936).  In deciding whether to stay proceedings, a district court must

21  weigh various competing interests, including "the possible damage which may result

22  from the granting of a stay, the hardship or inequity which a party may suffer [if the case

ORDER GRANTING MOTION TO STAY - 4

1  is allowed] to go forward, and the orderly course of justice measured in terms of the

2  simplifying or complicating of issues, proof, and questions of law which could be

3  expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir.

4  2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  "A stay should

5  not be granted unless it appears likely the other proceedings will be concluded within a

6  reasonable time in relation to the urgency of the claims presented to the court." *Leyva v.*

7  *Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).  The burden is on the

8  movant to show that a stay is appropriate.  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

9  The court concludes that the *Lockyer* factors weigh in favor of staying this case

10  pending the Supreme Court's resolution of *Duguid II*.  First, and most importantly, a stay

11  will promote the orderly course of justice because the Supreme Court's decision will

12  inform the central question at issue here:  whether eFinancial used an ATDS to send its

13  text messages to Mr. Borden.  (*See* Am. Compl. ¶ 51 (listing, as the first of Mr. Borden's

14  allegations regarding common questions under Fed. R. Civ. P. 23(a)(2), "whether

15  Defendant (or another on its behalf) used an ATDS to send the eFinancial Insurance Text

16  Message Advertisements to Plaintiff and the Plaintiff Class").)  Mr. Borden's only claim

17  in this action is that eFinancial used an ATDS to send text messages in violation of the

18  TCPA, and his factual allegations show that the text messages at issue were sent to him

19  because he entered his phone number into eFinancial's web form.  If the system that

20  eFinancial uses to send its text messages does not meet the definition of an ATDS—a

21  definition that the Supreme Court is expected to clarify in *Duguid II*—then Mr. Borden's

22  individual and class claims against eFinancial are not covered by the TCPA.  A stay

1    pending the resolution of this question will promote the orderly course of justice by

2    allowing the parties to avoid expending time and money conducting class action

3    discovery and certification briefing[1] on an issue central to eFinancial's liability while the

4    definition of ATDS remains unsettled.

5          Second, a stay is unlikely to cause harm to Mr. Borden.  Mr. Borden does not

6    allege that eFinancial has continued to send him text messages or that he is suffering any

7    ongoing harm from eFinancial's actions.  Rather, Mr. Borden seeks only statutory

8    damages.  "[A] delay in collecting potential damages is not a particularly severe

9    hardship."  *See Babare v. Sigue Corp.*, No. C20-0894JCC, slip op. at 3 (W.D. Wash.

10   Sept. 30, 2020) (citing *CMAX*, 300 F.2d at 268-69).  Mr. Borden also argues that he faces

11   a risk of an "irretrievable loss of critical evidence" if a stay is granted (*see* Opp. at 15),

12   but this risk appears minimal in light of the parties' obligations to preserve evidence.  *See*

13   *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL

14   5249263, at *3-4 (D. Ariz. Sept. 3, 2020) (describing these obligations).  Although Mr.

15   Borden has argued that a stay pending a decision in *Duguid II* would be "indefinite," the

16   Supreme Court has set oral argument in this case for December 8, 2020, and a ruling on

17   the matter is likely by the end of the Court's term in mid-2021.

18         Finally, proceeding with this case in the absence of a stay is likely to impose

19   hardship on eFinancial, including the substantial costs inherent in conducting class

20

21         ───────────────

     [1] The current deadline for completion of discovery is December 11, 2020, and the
22   deadline for Mr. Borden to file his motion for class certification is March 12, 2021.  (Order
     Extending Discovery and Class Certification Deadlines (Dkt. # 34).)

ORDER GRANTING MOTION TO STAY - 6

1  discovery and briefing motions that might ultimately prove to be affected or rendered

2  unnecessary by the Supreme Court's resolution of *Duguid II*.

3      In sum, the *Lockyer* factors weigh strongly in favor of granting eFinancial's motion

4  to stay.  The court GRANTS eFinancial's motion.

5                              **III.    CONCLUSION**

6      For the foregoing reasons, eFinancial's motion to stay the proceedings in this case

7  pending the Supreme Court's decision in *Duguid II* (Dkt. # 40), is GRANTED.  The parties

8  are directed to file a joint status report that proposes a new case schedule within 14 days of

9  the date the Supreme Court issues its opinion in *Duguid II*.

10

11      Dated this 16th day of October, 2020.

12

13

14  _____

15  JAMES L. ROBART
    United States District Judge

16

17

18

19

20

21

22

ORDER GRANTING MOTION TO STAY - 7