THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID BORDEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EFINANCIAL, LLC, a Washington Limited Liability Company,<br><br>Defendant. | No. 2:19-cv-01430-JLR<br><br>EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR:<br>JULY 2, 2021 |

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 1

    A.    Plaintiff's Allegations ................................................................................................ 1

    B.    Procedural History .................................................................................................... 3

III. LEGAL STANDARD .......................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 5

    A.    The Complaint does not sufficiently allege use of an ATDS. ................................. 5

        1.    *Duguid* confirms that "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." .......................................................... 5

        2.    Just as the U.S. Supreme Court held that Facebook did not use an ATDS, the Court here should find that eFinancial did not use an ATDS. ............................................................................................................... 7

        3.    Allegations that eFinancial's equipment picks the order in which to call telephone numbers is insufficient to trigger the ATDS prohibition. ................................................................................................ 9

        4.    Unfounded allegations that eFinancial's equipment can generate and dial Lead IDs are also insufficient to trigger the ATDS prohibition. ............................................................................................... 10

    B.    Even if Plaintiff did sufficiently allege use of an ATDS, the Complaint establishes prior express written consent. .................................................................. 11

    C.    Dismissal should be with prejudice. ....................................................................... 15

V. CONCLUSION ................................................................................................................... 16

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................................................6

*Allan v. Pa. Higher Educ. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020) ...................................................................................................6

*Applebaum v. Nissan Motor Acceptance Corp.*,
  226 F.3d 214 (3d Cir. 2000) ..................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................5, 10

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988), *as amended* (May 11, 1990) ....................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................5

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ....................................................................................................6

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020), *cert. granted, judgment vacated*, No. 20-308,
  2021 WL 1520774 (U.S. Apr. 19, 2021) .................................................................................7

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021) ..................................................................................................passim

*Foman v. Davis*,
  371 U.S. 178 (1962) ...............................................................................................................16

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) ...................................................................................................6

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020) ...............................................................................................6

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) .............................................................................................15

*Harbers v. Eddie Bauer, LLC*,
  No. C19-1012, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) .........................................12

*Kwan v. Clearwire Corp.*,
  No. C09-1392, 2012 WL 32380 (W.D. Wash. Jan. 3, 2012) .................................................11

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT
(No. 2:19-cv-01430-JLR) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

Page(s)

*Lundbom v. Schwan's Home Serv., Inc.*,
  No. 18-cv-02187, 2020 WL 2736419 (D. Or. May 26, 2020), *appeal dismissed*, No. 20-35480, 2020 WL 7048196 (9th Cir. Oct. 13, 2020)..................14

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) .................................................................................7

*McEwen v. Nat'l Rifle Ass'n of Am.*,
  No. 20-cv-00153, 2021 WL 1414273 (D. Me. Apr. 14, 2021)................................10

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)................................................................................12, 13

*Montanez v. Future Vision Brain Bank, LLC*,
  No. 20-cv-02959, 2021 WL 1697928 (D. Colo. Apr. 29, 2021) ..............................9

*Morris v. Modernize, Inc.*,
  No. AU-17-CA-00963, 2018 WL 7076744 (W.D. Tex. Sept. 27, 2018) ................13

*PA Higher Educ. Assistance v. Allan*,
  No. 20-723, 2021 WL 1520775 (U.S. Apr. 19, 2021) ..............................................7

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...................................................................................6

*Signavong v. Volt Mgmt. Corp.*,
  No. C07-515, 2007 WL 1813845 (W.D. Wash. June 21, 2007).............................12

*Wilson v. Playtika, Ltd.*,
  349 F. Supp. 3d 1028 (W.D. Wash. 2018).......................................................11, 12

**STATUTES**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ............................. passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200..........................................................................3,4, 12, 14, 15

Fed. R. Civ. P. 12(b)(6)..................................................................................5, 16

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I.  INTRODUCTION

This Court should dismiss Plaintiffs' Second Amended Complaint ("SAC") with prejudice. Since this case was stayed pending the outcome in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the Supreme Court has confirmed that a plaintiff cannot state a claim for violation of the automatic telephone dialing system ("ATDS") prohibition of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq.*, by alleging that his phone number was called from a stored list. Instead, a plaintiff must allege that his phone number was randomly or sequentially generated, *Duguid*, 141 S. Ct. at 1167, which Plaintiff cannot do.

The *Duguid* holding squarely governs here. Plaintiff *admits that he provided his phone number* to eFinancial when he submitted an online request for insurance information. He therefore *admits that his phone number was not randomly or sequentially generated* by eFinancial. Accordingly, Plaintiff not only fails to allege use of an ATDS, he pleads himself out of any possible amendment, and therefore his claim should be dismissed with prejudice.

Moreover, even if Plaintiff could plausibly allege use of an ATDS (he cannot), the SAC also establishes that Plaintiff gave his prior express consent to receive text messages from eFinancial. This too justifies dismissal of the SAC with prejudice.

## II.  BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff does not plausibly allege that eFinancial "store[d] or produce[d] telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1)(A). To the contrary, Plaintiff admits that he voluntarily provided his phone number to eFinancial while seeking life insurance information: "On December 22, 2018, Plaintiff was shopping on the Internet for life insurance to price and potentially purchase a policy." SAC ¶ 15. He visited Progressive.com and filled out a webform so that he could "obtain an online quote and begin the website-initiated purchase of life insurance." SAC ¶ 17. Plaintiff provided several pieces of his

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

personal information, including his name, gender, date of birth, zip code, *phone number*, height and weight, tobacco use history, and a self-rating of his health. *See* SAC ¶¶ 18, 22.

Plaintiff then clicked a button entitled "Next, your rates." That button appeared directly above the following language:

> Efinancial, LLC provides quotes from Fidelity Life and other insurers on this site. These entities are **not affiliated with Progressive.**
>
> By pressing the button above you agree to this website's [hyperlinked] Privacy Policy, and *you consent to receive offers of insurance from Efinancial, LLC at the email address or telephone numbers you provided, including autodialed, pre-recorded calls, SMS or MMS messages*. Message and data rates may apply. *You recognize and understand that you are not required to sign this authorization in order to receive insurance services from eFinancial and you may instead reach us directly at (866) 912-2477.*

SAC ¶ 18 (emphasis in original) (including screenshot from https://ulifeprogressive.efinancial.com/About). Plaintiff admits that the above language was on the page where he typed and submitted his information while seeking insurance quotes but asserts that he did not notice the language. SAC ¶¶ 7, 23.

After Plaintiff submitted the webform, he was "presented with [the] life insurance rates and rate-related information" for which he was searching. SAC ¶ 29.

A week later, Plaintiff received the following text message—which thanked him for his online request, gave him instructions to contact eFinancial, and provided an automated method to opt out of further communications:

> Progressive Advantage through eFinancial: Thanks for your life insurance request. Please call 866-235-2755. Msg&Data rates apply. Txt HELP or STOP to opt out.

SAC ¶ 36. Plaintiff received four similar text messages over the course of the next month. SAC ¶ 37. Each of these four text messages ended with the same "Txt HELP or STOP to opt out" language as the first message. SAC ¶ 37 (reproducing messages). Plaintiff does not allege that

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

eFinancial sent him any texts that were not related to his inquiry. Nor does he allege that he texted "STOP to opt out" as each text instructed he could do. *See* SAC ¶ 41.

B.  **Procedural History**

On September 6, 2019, Plaintiff filed a complaint against eFinancial. *See* Dkt. 1. In that complaint, Plaintiff alleged that eFinancial sent him the above text messages in violation of both (1) the FCC regulations surrounding the National Do-Not-Call registry, and (2) the TCPA's prohibition against using an ATDS without prior express consent. *See* Dkt. 1 ¶¶ 10, 17. Plaintiff also sought to represent a putative class with respect to both claims. Dkt. 1 ¶ 22. Plaintiff did not mention the fact that he submitted the aforementioned request for insurance information in this original complaint. *See generally id.*

On December 5, 2019, eFinancial filed an Answer to the original complaint in which it asserted several affirmative defenses—including that Plaintiff had given his prior express consent to receive the alleged text messages and that eFinancial did not use an ATDS to send the subject text messages to Plaintiff. *See* Dkt. 25 at 6.

On August 7, 2020, Plaintiff filed his first amended complaint ("FAC"). The FAC added Plaintiff's admissions that he provided his phone number in connection with a request for insurance information. Plaintiff contended in his FAC that he had "promptly forgot" about his request after he had submitted it (presumably to explain why he omitted this information from the original complaint). *See* Dkt. 39 ¶ 30; *see also id.* ¶ 37 ("At the time the eFinancial Insurance Text Message Advertisements were sent, Plaintiff had no recollection of visiting Defendant's website [1-4 weeks ago] when shopping for life insurance."). The FAC also deleted Plaintiff's individual and proposed class action claims based on purported National Do-Not-Call registry violations—presumably to account for Plaintiff's recollections about his insurance request, because a Do-Not-Call violation cannot exist where a plaintiff has submitted an "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call," 47 C.F.R. § 64.1200(f)(5) (defining "established

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

business relationship"),[1] as Plaintiff had done in December prior to receiving the subject text messages through January, *see* Dkt. 39 ¶¶ 13, 33, 34.

On July 9, 2020, the Supreme Court granted *certiorari* review in *Duguid*. This Court granted eFinancial's motion to stay this action pending a decision in that case. *See* Dkts. 40, 51. Notably, the Court held that a stay would "promote the orderly course of justice because the Supreme Court's decision will inform the central question [of] whether eFinancial used an ATDS to send its text messages to Mr. Borden." Dkt. 51 at 5. Even more specifically, this Court recognized that *Duguid's* clarification of the term "ATDS" would be important because Plaintiff's "factual allegations show that the text messages at issue were sent to him because he entered his phone number into eFinancial's web form." *Id*. The Court thus acknowledged that the *Duguid* decision could render Plaintiff's allegations that eFinancial automatically texted him after Plaintiff provided his phone number insufficient to state an ATDS claim.

The *Duguid* decision came down on April 1, 2021, and, as this Court anticipated it might, the decision rendered Plaintiff's allegations insufficient to state an ATDS claim (as explained further below). Nevertheless, Plaintiff refused to dismiss this case and instead insisted on filing a SAC. The substantive allegations in the SAC are generally the same as in the FAC, *see* Dkt. 54-1 (redline), but Plaintiff added allegations, in an apparent attempt to avoid the *Duguid* holding, that eFinancial's equipment "picks the order . . . in which . . . the telephone numbers [are] to be dialed . . . based on the adjustable but predetermined eFinancial Mass Text Advertisement Sequential Order." SAC ¶ 48; *see also id*. ¶¶ 34, 47 (emphasizing the ability of equipment to determine the order in which to pick telephone numbers to be dialed). Plaintiff also states— without alleging any facts to support the inference—that the equipment "has the capacity to dial the assembled sequential strings of numbers" that eFinancial allegedly "stores in the LeadID field" purportedly used to facilitate the sequential dialing of numbers. SAC ¶¶ 49, 50.

---

[1] *See also id*. §§ 64.1200(c)(2) (generally prohibiting "telephone solicitations" to those on the Do-Not-Call registry), 64.1200(f)(15) (defining "telephone solicitation" to exclude calls or messages "[t]o any person with whom the caller has an established business relationship").

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT
(No. 2:19-cv-01430-JLR) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

This motion to dismiss follows the Court's order granting Plaintiff's unopposed motion to file the SAC, *see* Dkt. 55, and pursuant to the schedule jointly proposed by the parties and adopted by the Court. *See* Dkts. 53 (setting May 10 deadline to amend complaint, 4-week deadline to move to dismiss SAC, and providing that "subsequent deadlines, if any" will be set by the Court after it decides the present motion to dismiss).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal adequacy of a complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *as amended* (May 11, 1990). A complaint must contain enough factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## IV. ARGUMENT

**A.    The Complaint does not sufficiently allege use of an ATDS.**

    **1.    *Duguid* confirms that "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."**

The U.S. Supreme Court recognized in *Duguid* that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq.*, was enacted in 1991 to address problems stemming from use of specific technology referred to as an automatic telephone dialing system ("ATDS"). *Duguid*, 141 S. Ct. at 1167 (citation omitted).[2] The term "ATDS" is statutorily defined to cover

---

[2] The TCPA was not passed to address "public outcry about unwanted text message advertisements," as Plaintiff asserts, because text messaging did not exist in 1991. *Compare* SAC ¶ 5, *with* https://en.wikipedia.org/wiki/Text_messaging ("SMS messaging was used for the first time on 3 December 1992[.]"). Indeed, eFinancial disputes that the TCPA was intended to or

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the type of technology that Congress was concerned about in 1991, namely, "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Despite its brevity, the ATDS definition had, prior to *Duguid*, been the subject of much debate after the D.C. Circuit exercised its authority under the Hobbs Act to set aside the FCC's prior interpretations of the term. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 695 (D.C. Cir. 2018). Starting in 2018, the circuits split over the definition. The Seventh, Eleventh, and Third Circuits concluded that a system that automatically dials telephone numbers from a stored list is *not* an ATDS because the definition hinges on *generation* of random or sequential phone numbers. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020) ("We . . . hold that the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced.'"); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1307 (11th Cir. 2020) (interpreting ATDS as "covering devices that randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (holding that ATDS prohibition is triggered by "generating random or sequential telephone numbers and dialing those numbers"). The Second, Sixth, and Ninth Circuits adopted a broader definition, concluding that systems that automatically dial numbers from stored lists (like customer lists) can be an ATDS even if they do not use a random or sequential number generator. *See Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 570 (6th Cir. 2020) (interpreting ATDS to cover Avaya Proactive Contact system that "create[d] calling lists based on a stored list of numbers"), *cert. granted, judgment vacated sub nom. PA Higher Educ. Assistance v. Allan*, No. 20-723, 2021 WL

---

does cover text messages, and this further justifies dismissal of the complaint. *See Duguid*, 141 S. Ct. at 1168 n. 2, 1173 (assuming that the ATDS prohibitions of the TCPA extend to text messages "without considering or resolving th[e] issue" because it was not disputed by the parties but noting that "[t]his Court must interpret what Congress wrote" in the TCPA); *but see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (deferring to FCC interpretation that prohibition extends to text messages).

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1520775 (U.S. Apr. 19, 2021), and *abrogated by Duguid*, 141 S. Ct. 1163; *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (interpreting ATDS to cover "ExpressText and EZ Texting programs" that could automatically "call numbers from stored lists, such as those generated, initially, by humans"), *cert. granted, judgment vacated*, No. 20-308, 2021 WL 1520774 (U.S. Apr. 19, 2021), and *abrogated by Duguid*, 141 S. Ct. 1163; *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1048 (9th Cir. 2018) (interpreting ATDS to cover "Textmunication system" that "automatically sen[t] the desired messages to . . . stored phone numbers at a time scheduled by the client"), *abrogated by Duguid*, 141 S. Ct. 1163.

The Supreme Court in *Duguid* resolved this split finding that "Congress' definition of an [ATDS] requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." 141 S. Ct. at 1170. As a result of this resolution of the circuit split over the ATDS definition, a TCPA plaintiff can no longer state a claim by alleging that a defendant automatically placed a call to a phone number on a stored list of phone numbers; rather, a TCPA plaintiff must plausibly allege that his phone number was randomly or sequentially generated. *See id.* (holding that claims against Facebook should be dismissed because the Plaintiff did not allege that his phone number was randomly or sequentially generated and the ATDS "definition excludes equipment like Facebook's login notification system, which does not use such technology").

### 2. Just as the U.S. Supreme Court held that Facebook did not use an ATDS, the Court here should find that eFinancial did not use an ATDS.

Plaintiff does not plausibly allege that eFinancial randomly or sequentially generated his phone number; instead, Plaintiff admits that eFinancial stored his phone number in a database based upon his request for insurance information and later sent text messages to the number that Plaintiff provided in order to address his requests. These allegations fail to state a claim for the same reasons as *Duguid*. (Indeed, the facts here are more favorable to the defense because

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT
(No. 2:19-cv-01430-JLR) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Duguid claimed he had been called in error while Plaintiff admits he was texted in connection with his own request for information.) Accordingly, *Duguid* controls and requires dismissal.

*Duguid* involved a security feature by which Facebook would send text alerts to Facebook users when account access attempts were made "from an unknown device or browser." *Duguid*, 141 S. Ct. at 1168. "To opt in to this service, the user [needed to] provide and verify a cell phone number to which Facebook can send messages." *Id*. Noah Duguid alleged that he had received several of these text alerts from Facebook—despite the fact that he didn't have a Facebook account and claimed he never gave his phone number to Facebook. *Id*. Duguid's legal theory was that "Facebook violated the TCPA by maintaining a database that stored phone numbers and programming its equipment to send automated text messages to those numbers each time the associated account was accessed by an unrecognized device or web browser." *Id*. Critically, Duguid did not argue that his phone number had been randomly or sequentially generated by Facebook. (The more likely explanation seemed to be that "Duguid was assigned a recycled cell phone number that previously belonged to a Facebook user who opted to receive login notifications." *Id*. at 1168 n. 3. Put differently, *someone* provided the phone number to Facebook—even if not Duguid himself.)

Thus, just like Plaintiff here, Duguid at base (1) alleged that Facebook stored his phone number in a database and later sent text messages to that number, and (2) did *not* allege that Facebook randomly or sequentially generated his phone number.

The Supreme Court rejected Duguid's legal theory "[b]ecause Facebook's notification system neither store[d] nor produce[d] numbers 'using a random or sequential number generator.'" *Id*. at 1169. Duguid protested that adopting this narrow definition of an ATDS would "unleash" a "torrent of robocalls," *id.* at 1172, but Justice Sotomayor responded simply that Duguid's "quarrel is with Congress, which did not define an [ATDS] as malleably as he would have liked," *id*. at 1173. And "[e]xpanding the definition of an autodialer to encompass

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT
(No. 2:19-cv-01430-JLR) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id*. at 1171.

The same is true here. Plaintiff's allegations establish that eFinancial did not randomly or sequentially generate his phone number. Instead, Plaintiff voluntarily provided his phone number to eFinancial when he submitted an insurance request through Progressive.com. Accordingly, the relevant prohibitions of the TCPA are thus wholly inapplicable, and Plaintiff's claims fail. *See, e.g.*, *Montanez v. Future Vision Brain Bank, LLC*, No. 20-cv-02959, 2021 WL 1697928, at *8 (D. Colo. Apr. 29, 2021) (denying motion to dismiss where "*as is necessary after [Duguid]*, Plaintiff alleged that Defendant's Platform generated the [telephone] numbers in sequential order") (emphasis added).

### 3. Allegations that eFinancial's equipment picks the order in which to call telephone numbers is insufficient to trigger the ATDS prohibition.

As noted above, Plaintiff's latest complaint attempts to avoid the required result by adding allegations that eFinancial's equipment "picks the order . . . in which . . . the telephone numbers [are] to be dialed." SAC ¶ 48; *see also id.* ¶¶ 34, 47 (emphasizing the ability of equipment to determine the order in which to pick telephone numbers to be dialed). Plaintiff's theory appears to be that, even if the phone numbers that eFinancial calls were not randomly or sequentially generated in the first instance (because they were provided through insurance requests), they are somehow sequentially generated when eFinancial pulls the telephone numbers from a stored list to place a call. *See* SAC ¶ 34 (equating the word "produce" with "select, retrieve, and/or provide the number from memory").

These allegations are nothing more than a reformulation of the argument rejected in *Duguid*, namely, that an ATDS should be broadly interpreted to encompass systems that "store numbers to be called" and "dial such numbers automatically." *Duguid*, 141 S. Ct. at 1168 (paraphrasing the now-abrogated Ninth Circuit test). Moreover, the allegations make no sense where Plaintiff admits he provided his phone number in connection with a request for insurance

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

quotes and admits he received texts responding to that request. Those texts were not randomly or sequentially generated, they were sent in response to Plaintiff's request for information.

    **4.    Unfounded allegations that eFinancial's equipment can generate and dial Lead IDs are also insufficient to trigger the ATDS prohibition.**

Plaintiff also alleges that eFinancial "uses a sequential number generator to assemble sequential strings of numbers in a field labeled LeadID," and that eFinancial's purported "ATDS further has the capacity to dial the assembled sequential strings of numbers." SAC ¶¶ 49, 50. These allegations also do not save Plaintiff's claims.

As an initial matter, these allegations should not be accepted as true, even on a motion to dismiss, because they are not supported by any factual content alleged by Plaintiff. *See Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Indeed, Plaintiff provides no explanation as to why it should be inferred that eFinancial's equipment has the capacity to dial LeadID numbers that are not "telephone numbers."

But even if the allegation that eFinancial possesses equipment that has the capacity to automatically dial Lead IDs were taken as true, the allegation is irrelevant. Plaintiff admits that he provided his phone number through Progressive.com, and *Duguid* holds that a defendant only triggers the ATDS prohibition of the TCPA if it actually *uses* a random or sequential telephone number generator. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 20-cv-00153, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [the defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). There is no allegation of use here.

Accordingly, Plaintiff's claims still fail.

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**B.   Even if Plaintiff did sufficiently allege use of an ATDS, the Complaint establishes prior express written consent.**

Even if Plaintiff did sufficiently allege use of an ATDS (he has not), any such use by eFinancial was lawful because the SAC establishes that Plaintiff gave prior express consent when he clicked the "Next, your rates" button that appeared directly over language stating that:

> Efinancial, LLC provides quotes from Fidelity Life and other insurers on this site. These entities are **not affiliated with Progressive.**
>
> By pressing the button above you agree to this website's [hyperlinked] Privacy Policy, and *you consent to receive offers of insurance from Efinancial, LLC at the email address or telephone numbers you provided, including autodialed, pre-recorded calls, SMS or MMS messages.* Message and data rates may apply. *You recognize and understand that you are not required to sign this authorization in order to receive insurance services from eFinancial and you may instead reach us directly at (866) 912-2477.*

SAC ¶ 18 (emphasis added). Plaintiff claims in the SAC that his providing of his telephone number and clicking the button above this language did not amount to prior express consent to receive texts. But each of the reasons proffered in the SAC for Plaintiff's position fail.

*First,* the SAC asserts that "no valid agreement" exists *at all* on the ground that a "browsewrap agreement" is at issue and Plaintiff allegedly did not engage in "some action capable of being construed as assent" or have reasonable notice of the terms of any such agreement. SAC ¶¶ 24, 25. But this case does not involve a browsewrap agreement. It instead involves a clickwrap agreement because Plaintiff had to manifest affirmative assent to the above terms by clicking the "Next, your rates" button. *See Kwan v. Clearwire Corp.*, No. C09-1392, 2012 WL 32380, at *7 (W.D. Wash. Jan. 3, 2012) (Robart, J.) ("Unlike a clickwrap agreement, where the user must manifest assent to the terms and conditions by clicking on an 'I agree' box, a browsewrap agreement does not require this type of express manifestation of assent.").

Clickwrap agreements are "regularly valid." *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1037 (W.D. Wash. 2018). "The defining features that makes clickwrap agreements

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

regularly valid are the forced confrontation with the terms and the forced decision to accept or reject them by clicking a button." *Id*. Those defining features are met here: Plaintiff was forced to confront the terms of the agreement—i.e., the language appearing directly below the "Next, your rates" button stating that "[b]y pressing the button above . . . you consent to receive offers of insurance from Efinancial, LLC . . . [and] recognize and understand that you are not required to sign this authorization in order to receive insurance services from eFinancial." SAC ¶ 18. Plaintiff also does not dispute that he was required to—and did—make the affirmative decision to click the "Next, your rates" button in order to submit his insurance request. SAC ¶ 28. Thus, Plaintiff cannot credibly dispute that a valid clickwrap agreement exists, such as by arguing that he was "deprived of the *opportunity* to read" the terms of the agreement. *Signavong v. Volt Mgmt. Corp.*, No. C07-515, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (Robart, J.) (emphasis added); *see also, e.g.*, *Harbers v. Eddie Bauer, LLC*, No. C19-1012, 2019 WL 6130822, at *7 (W.D. Wash. Nov. 19, 2019) (Robart, J.) ("In effect, Ms. Harbers' argument is that she does not remember viewing the disclosure on the Review Page or clicking the 'Submit Order' button. Courts have rejected the argument that there was no mutual assent on the grounds that a party failed to read or fails to remember the terms of a contract."). And contrary to Plaintiff's apparent assumption, there is no requirement that the button itself "reference . . . the fine print below" or include a "check box." SAC ¶ 24; *see, e.g.*, *Harbers*, 2019 WL 6130822, at *7 (finding valid agreement where the user only had to click the "Submit Order" button and where there was no checkbox or reference on the button itself to hyperlinked terms).

**Second,** Plaintiff argues that any prior express consent was not valid because the relevant disclosures were not clear and conspicuous. SAC ¶ 26. The term *clear and conspicuous* means "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." 47 C.F.R. § 64.1200(f)(3). The disclosures here are sufficient under this objective standard because they appeared directly below the "Next, your rates" button that Plaintiff had to click before submitting his insurance request. *See, e.g.*, *Meyer*

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding reasonably conspicuous notice as a matter of law where disclosure below REGISTER button stated that "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY"); *Morris v. Modernize, Inc.*, No. AU-17-CA-00963, 2018 WL 7076744, at *3 (W.D. Tex. Sept. 27, 2018) (finding TCPA disclaimer "would have been readily apparent to a reasonable consumer" where it "was located directly underneath the button used to submit the web form"). The relevant disclosures were also kept "separate and distinguishable from" other terms, including from the hyperlinked privacy policy. And while Plaintiff emphasizes that the disclosures were "significantly smaller and lighter font than the fonts used for the demographic queries above the fine print," SAC ¶ 24, there is no requirement that TCPA disclosures appear in the same size or color as the rest of a website; it is instead sufficient that the disclosures are "obvious to the eye" and "plainly visible," *Morris*, 2018 WL 7076744, at *3 ("[T]hough the disclaimer appeared in smaller font than the rest of the text appearing on the page, the relative size of the font does not alter the fact that the disclaimer remained both 'obvious to the eye' and 'plainly visible.'") (quoting *Applebaum v. Nissan Motor Acceptance Corp.*, 226 F.3d 214, 220 (3d Cir. 2000)); *see also, e.g., Meyer*, 868 F.3d at 78 (holding that placed directly underneath registration button was reasonably conspicuous despite use of small font). And, in any event, the relevant language is actually quite similar in size to other text in the webform (which Plaintiff must have been able to read since he admittedly completed the webform):

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 13

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000



SAC ¶ 18 (copy of image in SAC cropped to omit large margins in the complaint).

*Third,* Plaintiff argues that any prior express consent was not valid because the agreement "d[id] not actually disclose that the signer is agreeing to receive Telemarking [sic]." SAC ¶ 26. Under the FCC regulations, "[t]he term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). Here, the disclosure states "you consent to receive offers of insurance." SAC ¶ 18. That is clearly sufficient to give notice of telemarketing as that term is defined by the FCC because an offer naturally encourages purchase. Finally, to the extent that Plaintiff means to suggest that the word "telemarketing" must be included in the disclosure, he is mistaken. *See, e.g.*, *Lundbom v. Schwan's Home Serv., Inc.*, No. 18-cv-02187, 2020 WL 2736419, at *5 (D. Or. May 26, 2020), *appeal dismissed*, No. 20-35480, 2020 WL 7048196 (9th Cir. Oct. 13, 2020) ("The parties agree that the words "advertisement" or "telemarketing" need not be used verbatim in a disclosure to

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

satisfy the "express written consent" standard.") (citing *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019) (holding "agreements need not use magic words" to establish express consent)).

*Fourth,* Plaintiff argues that prior express consent was invalid because "the signer cannot make their website-initiated purchase of life insurance without entering into the purported agreement." SAC ¶ 26. The FCC regulations require a disclosure stating that a signer "is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(9)(i)(B). The relevant disclosure here expressly states "you are not required to sign this authorization in order to receive insurance services from eFinancial and you may instead reach us directly at (866) 912-2477." SAC ¶ 18. That disclosure satisfies the FCC requirement because it makes clear that a signature is not required for purchase. And if what Plaintiff means is that he must be permitted to make his purchase through the Progressive.com website without signing the agreement, there is no such requirement under either the TCPA or FCC regulations. A business like eFinancial is thus free to provide alternate *means* of purchase if a consumer opts out of automated calls.

In sum, even if Plaintiff had sufficiently alleged use of an ATDS (he has not), any such use was lawful because Plaintiff gave prior express consent when he clicked the "Next, your rates" button that appears directly over a clear and conspicuous disclosure that Plaintiff "consent[ed] to receive offers of insurance from Efinancial, LLC at the . . . telephone numbers [he] provided, including autodialed, pre-recorded calls, SMS or MMS messages" and that he was "not required to sign this authorization in order to receive insurance services from eFinancial." SAC ¶ 18. For this reason as well, Plaintiff's TCPA claims fail as a matter of law.

C.     **Dismissal should be with prejudice.**

Plaintiff cannot amend his complaint to allege that his phone number was randomly or sequentially generated in light of his admission that he provided his phone number to eFinancial through Progressive.com. Nor can Plaintiff amend his complaint to escape the fact that he gave

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT
(No. 2:19-cv-01430-JLR) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

his prior express consent to receive text messages from eFinancial. Accordingly, dismissal should be with prejudice because any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that dismissal with prejudice may be warranted due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."). Dismissal with prejudice is even more appropriate here because Plaintiff has already had the opportunity to amend his complaint twice before. *Id*.

## V. CONCLUSION

For the reasons stated above, eFinancial respectfully asks the Court to dismiss Plaintiff's SAC with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: June 8, 2021.

By: */s/ James G. Snell*
James G. Snell (*pro hac vice*)
**Perkins Coie LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
Email: JSnell@perkinscoie.com

By: */s/ Anna Mouw Thompson*
Anna Mouw Thompson #52418
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: AnnaThompson@perkinscoie.com

*Attorneys for Defendant eFinancial, LLC.*

EFINANCIAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
(No. 2:19-cv-01430-JLR) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000