UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID BORDEN,<br><br>              Plaintiff,<br>    v.<br><br>EFINANCIAL, LLC,<br><br>              Defendant. | CASE NO. C19-1430JLR<br><br>ORDER GRANTING MOTION TO DISMISS |

### I.    INTRODUCTION

Before the court is Defendant eFinancial, LLC's ("eFinancial") motion to dismiss Plaintiff David Borden's second amended complaint. (Mot. (Dkt. # 57); *see also* Reply (Dkt. # 63).) Mr. Borden opposes eFinancial's motion. (Resp. (Dkt. # 62).) The court has considered the motion, all submissions filed in support of and in opposition to the

//

//

//

ORDER - 1

motion, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS eFinancial's motion to dismiss.

## II.  BACKGROUND

Mr. Borden filed his original complaint in this proposed class action on September 9, 2019.  (Compl. (Dkt. # 1).)  On August 10, 2020, Mr. Borden filed an amended complaint, asserting one cause of action on behalf of himself and a proposed class under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("the TCPA").  (Am. Compl. (Dkt. # 39).)  The TCPA prohibits companies from using an "automatic telephone dialing system" ("ATDS" or "autodialer") to make calls to a telephone number assigned to a cellular service.  47 U.S.C. § 227(b)(1)(A).  It defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).  The TCPA does not impose liability where the "called party" provides "prior express consent" to receive calls.  *Id.* § 227(b)(1)(A).

Mr. Borden alleged that after completing a basic form on Progressive.com's website that offered a quote for life insurance, he was directed to a page on eFinancial's website that requested additional information, including his phone number.  (Am. Compl. ¶¶ 13-16; *see also* SAC (Dkt. # 56) ¶¶ 15-18.)  After completing the eFinancial form, Mr. Borden clicked a button labeled "Next, your rates," to proceed with the rate quote.  (Am. Compl. ¶¶ 17-20; SAC ¶¶ 19-22.)  Mr. Borden alleged that he did not see a message in

---

[1] Neither party requests oral argument (*see* Mot., Resp.), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

fine print below the "Next, your rates" button before he clicked. (Am. Compl. ¶ 21; SAC ¶ 23-24.) That message stated:

> By pressing the button above you agree to this website's Privacy Policy, and you consent to receive offers of insurance from Efinancial [sic], LLC at the email address or telephone number you provided, including autodialed, pre-recorded calls, SMS or MMS messages. Message and data rates may apply. You recognize and understand that you are not required to sign this authorization in order to receive insurance services from eFinancial and you may instead reach us directly at (866) 912-2477.

(Am. Compl. ¶¶ 21-22, Ex. 1; SAC ¶¶ 23-24, Ex. 1 ("ABOUT form").)

Although Mr. Borden decided not to move forward with his application for life insurance, he subsequently began to receive marketing text messages from eFinancial on his personal cell phone (the "eFinancial Insurance Text Message Advertisements"). (Am. Compl. ¶¶ 29-32; SAC ¶¶ 31-35.) He alleged that eFinancial sent its Insurance Text Message Advertisements using an ATDS and that the "Next, your rates" button and the fine print beneath it were insufficient to establish that he gave "prior express consent" to receive messages. (Am. Compl. ¶¶ 22-25, 37; SAC ¶¶ 24-27, 40.)

On October 16, 2020, the court granted eFinancial's motion to stay this matter pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511 (U.S.), which promised to resolve a split among the Courts of Appeals regarding how to interpret the statutory definition of "automatic telephone dialing system." (10/16/20 Order (Dkt. # 51) at 3-4 (discussing circuit split), 7); *see also Facebook Inc. v. Duguid*, --- U.S. ---, 141 S. Ct. 1163, 1168 (2021) ("We granted certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers.").

ORDER - 3

1  The Supreme Court issued its decision on April 1, 2021. *See Duguid*, 141 S. Ct. at 1163. The Court held that "a necessary feature of an [ATDS] is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173. Thus, the Court concluded that "[b]ecause Facebook's [text message] notification system neither stores nor produces numbers 'using a random or sequential number generator,'" it is not an ATDS, and Mr. Duguid's TCPA claim was properly dismissed. *Id.* at 1168-69. In reaching this decision, the Supreme Court abrogated prior Ninth Circuit precedent that had held that an ATDS need only have the capacity to "store numbers to be called" and to "dial such numbers automatically." *Id.* at 1168 (quoting *Duguid v. Facebook* (*"Duguid I"*), 929 F.3d 1146, 1151 (9th Cir. 2019), *overruled by Duguid*, 141 S. Ct. at 1168); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

After the Supreme Court issued its decision, the parties agreed that Mr. Borden would file an unopposed motion to file a second amended complaint and that eFinancial would then move for dismissal. (JSR (Dkt. # 52).) The court granted leave to amend, (5/11/21 Order (Dkt. # 55)), and Mr. Borden filed his second amended complaint on May 11, 2021, (SAC). In his second amended complaint, Mr. Borden adds allegations that eFinancial uses a sequential number generator to store and produce telephone numbers to which it sends the eFinancial Insurance Text Message Advertisements. (*See, e.g.*, SAC ¶¶ 6, 34, 40, 46-50; *see also* MTA (Dkt. # 54), Ex. 1 ("Redlined SAC") ¶¶ 6, 34, 40, 46-50.) For example, Mr. Borden now alleges:

> In sending [the] eFinancial Text Message Advertisements, [eFinancial] used a sequential number generator to store and subsequently produce (i.e., select, retrieve, and/or provide the number from memory) [Mr. Borden] and the putative class's telephone numbers. [eFinancial] used the sequential number generator to determine the order in which to pick the telephone numbers to be dialed from [eFinancial's ]stored list (database), such that each eFinancial Insurance Text Message Advertisement is sent in an adjustable but predetermined sequential order, which is based on the number of days since the lead form was initially completed ("eFinancial Mass Text Advertisement Sequential Order"). This was done for the sole purpose of bombarding [Mr. Borden] and the putative class with eFinancial Insurance Text Message Advertisements in a specific, yet adjustable, sequential order.

(SAC ¶ 34.) Mr. Borden further alleges:

> [eFinancial's]ATDS uses a sequential number generator to store telephone numbers, and to subsequently determine the order in which to pick the telephone numbers to be dialed. Specifically, the ATDS picks the order based on the adjustable but predetermined eFinancial Mass Text Advertisement Sequential Order, for the sole purpose of dialing those numbers and sending them eFinancial Insurance Text Message Advertisements *en masse*.
>
> . . . Additionally, Defendant's ATDS also uses a sequential number generator to assemble sequential strings of numbers in a field labeled LeadID, which are then stored and assigned to a telephone number and are used when the sequential number generator picks the order, which is based on the adjustable but predetermined eFinancial Mass Text Advertisement Sequential Order.
>
> . . . [eFinancial's ]ATDS further has the capacity to dial the assembled sequential strings of numbers it stores in the LeadID field.

(SAC ¶¶ 48-50.) Thus, Mr. Borden alleges that eFinancial uses a sequential number generator to (1) determine the order in which to pick phone numbers to be dialed from a stored list or database of phone numbers and (2) populate the LeadID field that is assigned to a phone number and used to identify phone numbers in its database. (*See id.*) Mr. Borden does not allege that eFinancial generates random or sequential phone numbers and sends text messages to those phone numbers. (*See generally* SAC.)

ORDER - 5

1   Mr. Borden also amended his allegations that he did not provide prior express
2   consent to receive the eFinancial Insurance Text Message Advertisements.  (*See* SAC
3   ¶¶ 7-8; Redlined SAC ¶¶ 7-8.)  Specifically, he now alleges that

> [eFinancial] chose to utilize an inconspicuous purported Internet browse-wrap agreement, which failed to establish assent from the consumer and did not include the disclosures required by the TCPA in order to protect consumers, leaving insurance seekers with no choice but to agree to the terms of [eFinancial's] purported agreement to participate in [eFinancial's] mass text message advertising campaign if the consumer endeavored to purchase online insurance.

(SAC ¶ 7.)

On June 8, 2021, eFinancial filed the instant motion to dismiss Mr. Borden's second amended complaint.  (Mot.)

### III.   ANALYSIS

eFinancial contends that Mr. Borden's TCPA claim must be dismissed with prejudice because (1) he acknowledges that he provided his phone number to eFinancial and, as a result, the phone number was not randomly or sequentially generated as required to plausibly allege the use of an ATDS, and (2) he gave prior express consent to receive the text messages when he clicked the "Next, your rates" button on the eFinancial website.[2]  (*See generally* Mot.)  Mr. Borden counters that (1) *Duguid* does not require that a phone number be randomly or sequentially generated to plausibly allege the use of an ATDS and (2) his allegations do not establish that he gave prior express consent to

---

[2] eFinancial disputes that the TCPA's prohibitions extend to sending unsolicited text messages.  (*See* Resp. at 5 n.2.)  It assumes for the purposes of this motion, however, that text messages are covered.  (*See id.* (*citing Duguid*, 141 S. Ct. at 1168 n.2 (assuming, but not deciding, that TCPA extends to text messages)).)

ORDER - 6

receive eFinancial's text messages.  (*See generally* Resp.)  As discussed in greater detail below, the court agrees with eFinancial that Mr. Borden has not plausibly alleged that it used an ATDS to send its text messages.  The court grants eFinancial's motion to dismiss and dismisses Mr. Borden's second amended complaint with prejudice.

**A.    Standard of Review**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Although not a "probability requirement," this standard asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  The court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and must accept all well-pleaded allegations of material fact as true, *see Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, the court need not accept as true a legal conclusion presented as a factual allegation.  *Iqbal*, 556 U.S. at 678.  The court may consider materials attached to or incorporated by reference in the pleadings.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**B.    eFinancial's Motion to Dismiss**

To state a claim under 47 U.S.C. § 227(b)(1)(A)*,* a plaintiff must plausibly allege

that "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042-43 (9th Cir. 2012). As noted above, an ATDS is defined as "equipment which has the capacity (A) to store or produce phone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Before *Duguid*, the Ninth, Second, and Sixth Circuits had held that a system qualified as an ATDS if it had the capacity to store phone numbers to be called and to dial such numbers automatically; it did not need to have the capacity to use a random or sequential number generator to generate the phone numbers in the first instance. *See Duguid*, 141 S. Ct. at 1169 n.2 (citing *Duguid I*, 936 F.3d at 1152 (holding that an ATDS need not be able to use a random or sequential generator to store phone numbers; rather, "it need only have the capacity to 'store numbers to be called' and 'to dial such numbers automatically'"); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 290 (2d Cir. 2020) (holding that system was an ATDS because it had capacity to store a list of phone numbers collected through defendant's Facebook advertisement and to "dial those stored numbers without human intervention"); *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 579 (6th Cir. 2020) (holding that defendant's device was an ATDS where it stored phone numbers provided by student-loan recipients and dialed those phone numbers automatically)). Other circuits, however, had held that a claim for violation of § 227(b)(1)(A) requires that the defendant's dialing system randomly or sequentially generate phone numbers and then dial those numbers. *See Duguid*, 141 S. Ct. at 1169 n.2

(citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020) (Barrett, J., for the court) (holding that AT&T's system was not an ATDS because it "exclusively dials numbers stored in a customer database"); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306-08 (11th Cir. 2020) (noting that "Congress . . . passed the law to prevent callers from accidently reaching 911 lines by dialing randomly or sequentially generated telephone numbers—a concern raised in the legislative debates" and holding that § 227 "cover[ed] devices that randomly or sequentially generated telephone numbers and dialed those numbers, or stored them for later dialing"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) (affirming grant of summary judgment to Yahoo where plaintiff could not show that Yahoo's system "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"). The Court granted certiorari to resolve this circuit split, which it characterized to be about "whether an autodialer must have the capacity to generate random or sequential phone numbers." *Duguid*, 141 S. Ct. at 1168-69.

The Supreme Court reversed *Duguid I* and held that the phrase "using a random or sequential number generator" modifies both "store" and "produce" in the statutory definition. *Id.* at 1169. The Court explained that Congress specifically intended § 227(b)(1)(A) to address the problems caused when companies used technology to dial random or sequential blocks of telephone numbers automatically:

> This case concerns "automatic telephone dialing systems" (hereinafter autodialers), which revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically. Congress found autodialer technology to be uniquely harmful. It threatened public safety by "seizing the telephone lines of public emergency services,

    dangerously preventing those lines from being utilized to receive calls from those needing emergency services." . . . Indeed, due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines.  Nor were individual consumers spared:  Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees.

*Id.* at 1167 (quoting H.R. Rep. No. 102-317, p.24 (1991) (internal citations omitted)).

Thus, "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.* at 1171; *see also id.* at 1172 ("That Congress was broadly concerned about intrusive telemarketing practices . . . does not mean it adopted a broad autodialer definition.  Congress expressly found that the use of random or sequential number generator technology caused unique problems for business, emergency, and cellular lines.  Unsurprisingly, then, the autodialer definition Congress employed includes only devices that use such technology, and the autodialer prohibitions target calls made to such lines." (internal citations omitted).)

    In this context, Mr. Borden's allegations are insufficient to establish that eFinancial's system is an ATDS.  He alleges that eFinancial's system uses a sequential number generator to select which stored phone numbers to dial and to populate the LeadID field that eFinancial's system uses to identify "or 'point to'" phone numbers in its database.  (*See* SAC ¶¶ 34, 48-50.)  He does not, however, allege that eFinancial's system "generate[s] random or sequential phone numbers" to be dialed; instead, he expressly alleges that he provided his phone number to eFinancial through the ABOUT form.  *See Duguid*, 141 S. Ct. at 1168; (*see* SAC ¶¶ 19-22).  eFinancial's use of its system to send

advertisement text messages to consumers who entered their phone numbers into a form on its website simply does not implicate the problems caused by autodialing of random or sequential blocks of numbers that Congress sought to address when it passed the TCPA.

Mr. Borden relies on footnote 7 of *Duguid* for the proposition that it is enough that an autodialer "use a random number generator to determine the order in which to pick numbers from a preproduced list [and] then store those numbers to be dialed at another time." (Resp. at 2 (quoting *Duguid*, 141 S. Ct. at 1172 n.7); *see also* Resp. at 5-6.) As eFinancial points out, however, Mr. Borden's argument relies on a selective reading of one line within footnote 7 and ignores the greater context of that footnote and the opinion. As another district court recently recognized, "the Court employed the quoted line to explain how an autodialer might both 'store' and 'produce' randomly or sequentially generated phone numbers." *Hufnus v. DoNotPay, Inc.*, No. 20-cv-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021). The Supreme Court cited an amicus brief filed by the Professional Association for Consumer Engagement ("PACE") in support of the narrow interpretation of ATDS that the Eleventh Circuit set forth in Glasser "narrower ATDS interpretation of *Glasser*" rather than the expansive interpretation favored by the Ninth, Second, and Sixth Circuits. *Duguid*, 141 S. Ct. at 1172 n.7; (*see* Reply, Ex. A ("PACE Brief") at 32-33). Rather than support Mr. Borden's position, the PACE Brief makes clear that the preproduced list of phone numbers referenced in footnote 7 was itself created through a random or sequential number generator, thus differentiating it from the stored list of consumer-provided phone numbers used by eFinancial. (*See generally* PACE Brief at 19; *see* SAC ¶¶ 19-22); *see*

also *Hufnus*, 2021 WL 2585488, at \*1-\*2 (discussing footnote 7 and granting motion to dismiss where plaintiff alleged that defendant collected phone numbers from consumers who signed up for defendant's services); *Timms v. USAA Fed. Savings Bank*, No. 3:18-cv-01495-SAL, 2021 WL 2354931, at \*5-\*6 (D.S.C. June 9, 2021) (discussing footnote 7 and granting motion for summary judgment where plaintiff contended that defendant's system qualified as an ATDS if it used a random number generator to determine the order in which to pick phone numbers from a preproduced list).

Because Mr. Borden has not plausibly alleged that the system that eFinancial used to send its Insurance Text Message Advertisements was an ATDS within the meaning of the TCPA, the court need not address whether Mr. Borden plausibly alleged that he did not provide prior express consent for eFinancial to send him those text messages. The court GRANTS eFinancial's motion to dismiss Mr. Borden's second amended complaint. Further, because Mr. Borden expressly alleges that he provided his phone number to eFinancial—and thus the text messages at issue necessarily were not sent through an ATDS—the court concludes that amendment would be futile and dismisses this action with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS eFinancial's motion to dismiss (Dkt. # 57). The court DISMISSES this action with prejudice.

Dated this 13th day of August, 2021.

JAMES L. ROBART
United States District Judge